John Yanchunis*
Patrick A. Barthle II*
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone:  (813) 223-5505
Facsimile:   (813) 223-5402
jyanchunis@forthepeople.com
pbarthle@forthepeople.com

Clayeo C. Arnold, California SBN 65070
Joshua H. Watson, California SBN 238058
**CLAYEO C. ARNOLD, APC**
865 Howe Avenue
Sacramento, California 95825
916-777-7777 Telephone
916-924-1829 Facsimile
Email: carnold@justice4you.com
Email: jwatson@justice4you.com

Jean Sutton Martin*
**LAW OFFICE OF JEAN SUTTON
MARTIN PLLC**
2018 Eastwood Road, Suite 225
Wilmington, North Carolina
Telephone:  (910) 292-6676
jean@jsmlawoffice.com

Christopher Jennings*
**JOHNSON FIRM**
chris@yourattorney.com
2226 Cottondale Lane, Suite 210
Little Rock, AR 72202
Telephone: (501) 372-1300
Facsimile:  (888) 505-0909

*Pro hac vice forthcoming

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ANDREW EAST on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

1  Plaintiff Andrew East ("Plaintiff" or "East"), by and through his undersigned attorneys,

2  bring this action on behalf of himself and all others similarly situated and allege the following,

3  based upon personal knowledge as to himself and, in all other respects, based on publicly available

4  information, the investigation of counsel, and information and belief.

5  **I.     INTRODUCTION**

6        1.      This is a class action brought by Plaintiff on behalf of a class of all similarly

7  situated purchasers of defective Intel x86-64x core processors (CPUs) manufactured and sold by

8  Defendant Intel Corporation ("Defendant" or "Intel"). Despite knowing that the CPUs are

9  defective, Defendant marketed and sold the CPUs to thousands upon thousands of unsuspecting

10  consumers, causing them to suffer damages.

11        2.      Specifically, Defendant's x86-64x CPUs suffer from a security defect that causes

12  the CPUs to be exposed to troubling security vulnerabilities by allowing potential access to

13  extremely secure kernel data (the "Defect"). The only reported way to "fix" or "patch" this

14  vulnerability requires extensive changes to the root levels of the Operating System which will

15  dramatically reduce performance of the CPU. The Defect renders the Intel x86-64x CPUs unfit

16  for their intended use and purpose.

17        3.      The Defect exists in all Intel x86 architecture processors since 1995 and all other

18  CPUs manufactured since at least 2008.[1] The x86-64x CPU is, and was, utilized in the majority

19  of all desktop, laptop computers, and servers in the United States.

20        4.      To date, Defendant has been unable or unwilling to repair the Defect or offer

21  Plaintiff and Class members a non-defective CPU or reimbursement for the cost of such CPU and

22  the consequential damages arising from the purchase and use of such CPUs. Indeed, there does

23  not appear to be a true "fix" for the Defect. The security "patch," while expected to cure the

24  security vulnerabilities, will dramatically degrade the CPU's performance. Therefore, the only

25  "fix" would be to exchange the defective x86-64x processor with a device containing a processor

26  

27  [1] https://www.forbes.com/sites/thomasbrewster/2018/01/03/intel-meltdown-spectre-vulnerabilities-leave-millions-open-to-cyber-attack/#1f76daf63932 (last visited February 20,

28  2018).

CLASS ACTION COMPLAINT

not subject to this security vulnerability. In essence, Intel x86-64x CPU owners are left with the unappealing choice of either purchasing a new processor or computer containing a CPU that does not contain the Defect, or continuing to use a computer with massive security vulnerabilities or one with significant performance degradation.

5.    The CPUs Intel manufactured and sold to Plaintiff and Class members were not merchantable and were not fit for the ordinary and particular purposes for which such goods are used, in that the CPUs suffer from a critical security defect, requiring an OS-level software patch that will degrade the performance of the CPU.

6.    Plaintiff brings this suit to enjoin the unlawful marketing and sale of the defective CPUs by Defendant and for the damages Plaintiff and similarly situated purchasers have sustained as a result. Given the substantial quantity of defective CPUs that have been sold nationally, a class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for aggrieved consumers.

II.    **PARTIES**

7.    Plaintiff Andrew East is, and at all relevant times was, a resident and citizen of the State of Kentucky. He purchased an Asus N56JN-MB71 Laptop from Micro Center in July 2014. This Asus laptop is powered by an Intel Core i7-4700HQ Processor. Plaintiff purchased a PowerSpec G151 PC from Micro Center in May 2016. This PowerSpec computer is powered by a Intel Core i5-7500. He was unaware of the Defect described herein prior to his purchase of the CPU products. Had Defendant disclosed such material facts, Plaintiff would not have purchased the CPU products or paid the price he did.

8.    Defendant Intel Corporation is, and at all relevant times was, a citizen of the State of Delaware and of the State of California, as it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California.

III.    **JURISDICTION AND VENUE**

9.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds

2

CLASS ACTION COMPLAINT

$5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and emanated from this judicial district. Defendant is also a citizen of the state of California with its principal places of business in this District.

**IV.     COMMON FACTUAL ALLEGATIONS**

11.     Intel describes itself as a world leader in the design and manufacture of any array of technology products. Intel designs, manufactures and advertises its CPUs in this state and nationally.

12.     Intel sells hundreds of millions of CPUs. In the third quarter of its financial year in 2014, Defendant sold over 100 million processors.[2]

**The Defect**

13.     On or about November 21, 2017, reports revealed that a large number of Intel processors contain a serious design flaw that creates significant security vulnerabilities for any device that uses Intel processors.[3]

14.     The security flaw is in Intel's x86-64 hardware, which was first introduced in 2004, and is still in use in the majority of today's modern-day processors. The Defect is believed to exist in almost every Intel processor made since at least 2004.

15.     Intel's x86-64x processors are the most widely-used chips in virtually all desktop and laptop computers, and are compatible with many computer operating systems including Windows, Mac OSX and Linux. Intel processors are also used in most large, cloud-based services such as those from Google, Microsoft and Amazon.

16.     Specifically, the Defect concerns security holes residing mainly in the feature

---

[2] http://www.tomshardware.com/news/intel-finance-record-revenue-3q13,27889.html (last visited February 20, 2018).
[3] http://fortune.com/2017/11/21/intel-core-cpu-security-minix/ (last visited February 20, 2018).

CLASS ACTION COMPLAINT

known as the "management engine" of the CPU. These security vulnerabilities pose a significant threat in that they allow, among other things, the ability for hackers to load and run unauthorized programs and malicious software, crash systems, impersonate system security checks, and allow applications malware, and JavaScript running in web browsers to obtain information they should not be allowed to access – namely, the contents of the operating system kernel's private memory areas.

17.    The Defect allows hackers access to information such as passwords to accounts, security keys to encrypted files, and other computer information that computer users would expect to remain secure and confidential.

15.    Reports have described that there are remedial measures purchasers can take to safeguard against the security vulnerabilities posed by the Defect. However, these remedial measures create what is known a performance hit, or drop off in the performance of the CPU. For instance, fixing the Defect using an OS-level software "patch" causes the CPU to slow down.

16.    As *The Register* reported on January 2, 2018:

A fundamental design flaw in Intel's processor chips has forced a significant redesign of the Linux and Windows kernels to defang the chip-level security bug.

Programmers are scrambling to overhaul the open-source Linux kernel's virtual memory system. Meanwhile, Microsoft is expected to publicly introduce the necessary changes to its Windows operating system in an upcoming Patch Tuesday: these changes were seeded to beta testers running fast-ring Windows Insider builds in November and December.

Crucially, these updates to both Linux and Windows will incur a performance hit on Intel products. The effects are still being benchmarked, however we're looking at *a ballpark figure of five to 30 per cent slow down*, depending on the task and the processor model. More recent Intel chips have features – such as PCID – to reduce the performance hit. [...]

Similar operating systems, such as Apple's 64-bit macOS, will also need to be updated – the flaw is in the Intel x86-64 hardware, and it appears a microcode update can't address it. *It has to be fixed in software at the OS level, or go buy a*

4

*new processor without the design blunder.*

Details of the vulnerability within Intel's silicon are under wraps: an embargo on the specifics is due to lift early this month, perhaps in time for Microsoft's Patch Tuesday next week. Indeed, patches for the Linux kernel are available for all to see but comments in the source code have been redacted to obfuscate the issue.[4]

17.    The Defect's presence is material because fixing the Defect reduces the performance of the CPUs thereby causing the CPUs to slow down from the performance specifications that Defendant promised and that consumers expected when buying a computer product with an Intel CPU.

18.    Plaintiff and the Class are damaged financially by this "performance hit" in processor speed. Purchasers pay a premium for enhanced processor speed, in the amount of hundreds or thousands of dollars.[5] By slowing down the CPU, its value degrades to that of a processor of that lower speed. This diminution of value to the CPU damages Plaintiff and all class members. The lessened value of the slowed CPU is calculated by a historical market comparison.

19.    The Defect is also material because of the security vulnerabilities Intel based CPUs are exposed to.

20.    As The Register article further explains:

Impact

It is understood the bug is present in modern Intel processors produced in the past decade. It allows normal user programs – from database applications to JavaScript in web browsers – to discern to some extent the layout or contents of protected kernel memory areas.

The fix is to separate the kernel's memory completely from user processes using what's called Kernel Page Table Isolation, or KPTI. [...]

Whenever a running program needs to do anything useful – such as write to a file or open a network connection – it has to temporarily hand control of the processor

---

[4] https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw (emphasis added) (last visited February 20, 2018).
[5] http://www.techradar.com/news/best-processors (last visited February 20, 2018).

CLASS ACTION COMPLAINT

to the kernel to carry out the job. To make the transition from user mode to kernel mode and back to user mode as fast and efficient as possible, the kernel is present in all processes' virtual memory address spaces, although it is invisible to these programs. When the kernel is needed, the program makes a system call, the processor switches to kernel mode and enters the kernel. When it is done, the CPU is told to switch back to user mode, and reenter the process. While in user mode, the kernel's code and data remains out of sight but present in the process's page tables. [...]

These KPTI patches move the kernel into a completely separate address space, so it's not just invisible to a running process, it's not even there at all. Really, this shouldn't be needed, but clearly there is a flaw in Intel's silicon that allows kernel access protections to be bypassed in some way.

The downside to this separation is that it is relatively expensive, time wise, to keep switching between two separate address spaces for every system call and for every interrupt from the hardware. These context switches do not happen instantly, and they force the processor to dump cached data and reload information from memory. *This increases the kernel's overhead, and slows down the computer.*

*Your Intel-powered machine will run slower as a result.*[6]

21.    In an effort to run as quickly as possible, Intel processors run something called "speculative execution." In essence, the processor attempts to guess what operation is going to be run next so that code can be standing by, ready to execute. When the processor selects what it believes is the next operation, it will fetch the code(s) needed to carry out that operation and have the code(s) on standby. However, Intel's "speculative execute" code may "fetch" secure codes without first performing a security check which would block such a request. So an innocuous program such as Javascript might be exploited to gain access to extremely secure kernel data. Or as the *The Register* writes, "[t]hat would allow ring-3-level user code to read ring-0-level kernel data. And that is not good."[7]

───────────────

[6] *Id.* (emphasis added).

[7] https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw/ (last visited February 20,

22.    The Defect is material because neither Plaintiff, Class members, nor any reasonable consumer would have purchased the defective Intel CPUs at the prices that they did had they known or had they been told by Intel or its retail agents about the Defect prior to purchase.

23.    The Defect is unprecedented in scope in that it exposes millions and millions of Intel-based computers to critical security vulnerabilities and hacking and the "patch" to cure these security vulnerabilities will result in substantial performance degradation.

**Intel Admits the Defect Exists**

24.    Intel is aware that its CPUs suffer from the Defect that exposes the CPUs to critical security vulnerabilities and that proposed OS-level software patches will slow the performance of these CPU chips.

25.    On January 3, 2018, Intel issued a press release in response to the myriad news media reports concerning the Defect, stating:

Intel Responds to Security Research Findings

Intel and other technology companies have been made aware of new security research describing software analysis methods that, when used for malicious purposes, have the potential to improperly gather sensitive data from computing devices that are operating as designed. Intel believes these exploits do not have the potential to corrupt, modify or delete data.

Recent reports that these exploits are caused by a "bug" or a "flaw" and are unique to Intel products are incorrect. Based on the analysis to date, many types of computing devices — with many different vendors' processors and operating systems — are susceptible to these exploits.

Intel is committed to product and customer security and is working closely with many other technology companies, including AMD, ARM Holdings and several operating system vendors, to develop an industry-wide approach to resolve this

_____

2018).

CLASS ACTION COMPLAINT

issue promptly and constructively. Intel has begun providing software and firmware updates to mitigate these exploits. Contrary to some reports, any performance impacts are workload-dependent, and, for the average computer user, should not be significant and will be mitigated over time.

Intel is committed to the industry best practice of responsible disclosure of potential security issues, which is why Intel and other vendors had planned to disclose this issue next week when more software and firmware updates will be available. However, Intel is making this statement today because of the current inaccurate media reports.

Check with your operating system vendor or system manufacturer and apply any available updates as soon as they are available. Following good security practices that protect against malware in general will also help protect against possible exploitation until updates can be applied.

Intel believes its products are the most secure in the world and that, with the support of its partners, the current solutions to this issue provide the best possible security for its customers.[8]

26.     Defendant's press release acknowledges the existence of the Defect, claims other vendors (competitors) products also suffer from this Defect, and downplays the performance impact which it claims "will be mitigated over time." Defendant also contends that its defective chips are "operating as designed" but the design itself is inadequate and insecure.

27.     Intel has failed to cure the Defect or replace Plaintiff's Intel CPUs with non-defective CPUs and offer full compensation required under federal and state law. Intel has not issued a recall of the defective CPUs.

28.     As discussed previously, any "fix" would require extensive changes at the root levels of OS software, which would assuredly impact the performance of Intel processor-based machines.

---

[8] *Intel Refutes Chip "Bug," "Inaccurate Media Reports,"* BARRONS, available at: https://www.barrons.com/articles/intel-refutes-chip-bug-inaccurate-media-reports- 1515010736 (last visited February 20, 2018).

CLASS ACTION COMPLAINT

29.     More importantly, any "fix" would not only directly impact the performance of a particular user's Intel-based device, but have indirect performance impacts as well. Countless servers that run internet-connected services in a cloud will see a dramatic degradation in performance, which will have a downstream impact to all users of these servers. Thus, cloud-based services like Microsoft, Google, and Amazon will see performance degradation.

## V.    CLASS ACTION ALLEGATIONS

30.     The claims of all members of the Class derive directly from a single course of conduct on the part of Intel. Intel has engaged, and continues to engage, in uniform and standardized conduct, the omission of material information from the Class. Intel does not differentiate, in degree of care or candor, its actions or inactions, or the content of its omissions, among individual members of the Class. Accordingly, Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(2), (b)(3) and (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

31.     Plaintiff brings this action and seek to certify and maintain it as a class action under Rules 23(a), (b)(1) and/or (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure on their behalf and on behalf of the following Class:

> All individuals or entities within the United States who purchased an Intel CPUs from Intel and/or its authorized retailer sellers.

32.     The following persons are excluded from the Class: Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; counsel for Plaintiff or anyone employed by counsel for Plaintiff in this action and their immediate family; and any Judge to whom this case is assigned and his or her immediate family and staff.

33.     Plaintiff reserves the right to amend or modify the Class definition in connection

CLASS ACTION COMPLAINT

1    with a motion for class certification and/or the result of discovery.

2        34.    This action has been brought and may properly be maintained on behalf of the

3    Class proposed above under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

4        35.    **Numerosity**. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).

5    Class is so numerous that joinder of the individual members of the proposed Class is

6    impracticable. The Class includes thousands, perhaps millions, of persons geographically

7    dispersed throughout the United States. The precise number and identities of Class members are

8    unknown to Plaintiff, but are known to Defendant or can be ascertained through discovery, using

9    records of sales, warranty records, and other information kept by Defendant or its agents. Plaintiff

10   anticipates providing appropriate notice to the Class, in compliance with Fed. R. Civ. P.

11   23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to

12   court order under Fed. R. Civ. P. 23(d).

13       36.    **Existence and predominance of common questions**. Common questions of law

14   and fact exist as to all members of the Class and predominate over questions affecting only

15   individual members of the Class members as is required by Fed. R. Civ. P. 23(a)(2). These

16   common questions include the following:

17       a.    Whether Defendant engaged in the conduct alleged herein;

18       b.    Whether Defendant's CPUs possess the Defect;

19       c.    Whether Defendant made any implied warranties in connection with the

20              sale of the defective CPUs;

21       d.    Whether Defendant breached any implied warranties relating to its sale

22              of defective CPUs by failing to resolve the Defect in a manner required

23              by law;

24       e.    Whether Defendant violated applicable consumer protection laws by

25              selling CPUs with the Defect and/or by failing to disclose the Defect,

26              and failing to provide the relief required by law;

27       f.    Whether, by omitting material information that it had a duty to disclose,

28

CLASS ACTION COMPLAINT

Defendant falsely advertised, marketed, and sold Dedicated Server services;

 g. Whether Defendant violated Cal. Bus. & Prof. Code § 17200 by failing to disclose or concealing material facts as described herein;

 h. Whether Defendant violated Cal. Bus. & Prof. Code § 17500 by failing to disclose or concealing material facts as described herein;

 i. Whether Defendant is liable to the Class for damages and/or penalties, as a result of their own knowledge, conduct, action, or inaction, and if so, in what amount; and

 j. Whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction.

37. **Typicality.** Plaintiff's claims are typical of the claims of the Class as required by Fed. R. Civ. P. 23(a)(3), because, among other things, Plaintiff purchased a defective CPU and Plaintiff's claims are based on the same factual and legal theories as the Class.

38. **Adequacy.** Plaintiff is an adequate representative because his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the members of Class will be fairly and adequately protected by Plaintiff and his counsel. As such, Plaintiff meets the requirements of Fed. R. Civ. P. 23(a)(4).

39. **Declaratory and Injunctive Relief.** Fed. R. Civ. P. 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

40. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be

CLASS ACTION COMPLAINT

1    encountered in the management of this matter as a class action.  The damages, harm, or other

2    financial detriment suffered individually by Plaintiffs and the other members of their respective

3    classes are relatively small compared to the burden and expense that would be required to litigate

4    their claims on an individual basis against Defendants, making it impracticable for Class members

5    to individually seek redress for Defendants' wrongful conduct.  Even if Class members could

6    afford individual litigation, the court system could not. Individualized litigation would create a

7    potential for inconsistent or contradictory judgments, and increase the delay and expense to all

8    parties and the court system. By contrast, the class action device presents far fewer management

9    difficulties and provides the benefits of single adjudication, economies of scale, and

10   comprehensive supervision by a single court.

11         41.   Further, Defendants have acted or refused to act on grounds generally applicable

12   to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to

13   the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of

14   Civil Procedure.

15         42.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification

16   because such claims present only particular, common issues, the resolution of which would

17   advance the disposition of this matter and the parties' interests therein.  Such particular issues

18   include, but are not limited to:

19               a.    Whether Defendant's CPUs contain the Defect;

20               b.    Whether (and when) Defendants knew about the Defect before it was

21                     disclosed to the public;

22               c.    Whether Defendants concealed crucial information about the Defect from

23                     Plaintiff and the Class;

24               d.    Whether Defendant violated applicable consumer protection laws by

25                     selling CPUs with the Defect and/or by failing to disclose the Defect;

26               e.    Whether Defendants' conduct was an unlawful or unfair business practice

27                     under Cal. Bus. & Prof. Code § 17200, *et seq.*; and,

28                                              12

f.      Whether Defendants' acts, omissions, misrepresentations, and practices were and are likely to deceive consumers.

## VI.    CLAIMS ALLEGED

### First Claim for Relief

### Breach Of Implied Warranty

43.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 42 as though fully stated herein.

44.    Defendant and its authorized agents and resellers sold Intel CPUs to Plaintiff and Class members in the regular course of business.

45.    Defendant impliedly warranted to members of the general public, including Plaintiff and Class members, these CPUs were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it is made, of average worth in the marketplace, or not broken, unworkable, damaged, contaminated or flawed), was of the same quality as those generally acceptable in the trade or that would pass without objection in the trade, were free from material defects and were reasonably fit for the ordinary purposes for which they were intended or used. In addition, Defendant either was or should have been aware of the particular purposes for which such CPUs are used, and that Plaintiff and the Class members were relying on the skill and judgment of Defendant to furnish suitable goods for such purpose.

46.    Pursuant to agreements between Defendant and its authorized agents and re-sellers, the stores Plaintiff and Class members purchased their defective Intel CPUs from are authorized retailers and authorized CPU service facilities. Plaintiff and Class members are third-party beneficiaries of, and substantially benefited from, such contracts.

47.    Defendant breached its implied warranties by selling Plaintiff and Class members defective Intel CPUs. The Defect renders the Intel CPUs unmerchantable and unfit for their ordinary or particular use or purpose. Defendant has refused to recall, repair or replace, free of charge, all Intel CPUs or any of their defective component parts or refund the prices paid for such

13

1  CPUs.

2      48.    The Defect in the Intel CPUs existed when the CPUs left Defendant's and their

3  authorized agents' and retail sellers' possession and thus is inherent in such CPUs.

4      49.    As a direct and proximate result of Defendant's breach of its implied warranties,

5  Plaintiff and Class members have suffered damages and continue to suffer damages, including

6  economic damages at the point of sale in terms of the difference between the value of the CPUs

7  as warranted and the value of the CPUs as delivered. Additionally, Plaintiff and Class members

8  either have or will incur economic, incidental and consequential damages in the cost of repair or

9  replacement and costs of complying with continued contractual obligations as well as the cost of

10  buying an additional CPU they would not have purchased had the CPUs in question not contained

11  the non-repairable Defect.

12      50.    Plaintiff and Class members are entitled to legal and equitable relief against

13  Defendant, including damages, specific performance, rescission, attorneys' fees, costs of suit, and

14  other relief as appropriate.

15                    **Second Claim for Relief**

16              **Violation Of Consumers Legal Remedies Act**

17        **(California Business & Professions Code §§ 1750, *et seq.*)**

18      51.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained

19  in paragraphs 1 through 42 as though fully stated herein.

20      52.    The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers

21  against unfair and deceptive business practices. The CLRA applies to Defendant's acts and

22  practices because it covers transactions involving the sale of goods to consumers.

23      53.    Cal. Bus. & Prof. Code § 17500 provides**:**

24          It is unlawful for any . . . corporation . . . with intent directly or
           indirectly to dispose of real or personal property or to perform
25          services, professional or otherwise,. . . to induce the public to enter
           into any obligation relating thereto, to make or disseminate or cause
26          to be made or disseminated … from this state before the public in
           any state, in any newspaper or other publication, or any advertising
27          device, . . . or in any other manner or means whatever, including

28                              14

> over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

54.    The Intel CPUs are "goods" under California Civil Code §1761(a).

55.    Intel is a "person" under California Civil Code §1761(c).

56.    Plaintiff and the Class members are "consumers" under California Civil Code §1761(d).

57.    Plaintiff and Class members engaged in "transactions" under California Civil Code §1761(e), including the purchase of Intel CPUs and the presentation of Intel CPUs for repair or replacement of the Defect.

58.    Intel's unfair and deceptive business practices were intended and did result in the sale of Intel CPUs, a defective consumer product.

59.    Defendant's Intel CPUs failed to perform in accordance with their expected characteristics, uses and benefits.

60.    Defendant had exclusive knowledge of material facts, *i.e.* the Intel CPUs were defective, unknown to Plaintiff and Class members. If Plaintiff and Class members had known of the Defect in the Intel CPU, they would not have purchased the CPUs at the prices they did, if at all.

61.    Defendant had a duty to disclose the Defect in the Intel CPU for various reasons, including:

    a.    Intel had exclusive knowledge of the Defect and other material facts not known to Plaintiff or the Class; and

    b.    Intel actively concealed material facts from Plaintiff and the Class.

62.    Defendant engaged in unfair and deceptive practices by misrepresenting or not disclosing the above material facts from Plaintiff and the Class, in violation of Cal. Civ. Code §1770(a)(5), (7), (14) and (16).

63.    Defendant's acts, omissions, misrepresentations, and practices alleged herein violated the following provisions of the CLRA, Cal. Civ. Code §1770, which provides in relevant

15

part that the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale of lease of goods to any consumer are unlawful:

      a.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have (§1770(a)(5));

      b.    Representing that goods or services are of a particular standard, quality, or grade … if they are of another (§1770(a)(7));

      c.    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (§1770(a)(14));

      d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (§1770(a)(16)).

64.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class members suffered injury. Plaintiff and Class members are entitled to injunctive and equitable relief, including restitution, disgorgement, and/or restitutionary disgorgement of any money Defendant acquired by unfair competition, court costs and attorney fees, and other relief the Court deems proper. Plaintiff and the class reserve the right to issue a notice letter pursuant to code, and to thereafter amend this Complaint as of right to seek damages.

**Third Claim for Relief**

**Violation Of California Unfair Competition Law**

**(California Business & Professions Code §§ 17200, *et seq.*)**

65.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 42 as though fully stated herein.

66.    Defendant's business acts and practices complained of were centered in, carried out, effectuated and perfected within the State of California, and injured Plaintiff and all Class

CLASS ACTION COMPLAINT

members.

67. Beginning as early as 2004, and continuing thereafter at least up through and including the date of filing this Complaint, Defendant committed acts of unlawful practices and unfair competition, as defined by §17200, *et seq.*, of the California Business and Professions Code, by engaging in the acts and practices specified above.

68. This claim is brought pursuant to §§17203 and 17204 of the California Business and Professions Code to obtain equitable monetary and injunctive relief from Defendant for acts and practices as alleged herein that violated §17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

69. Defendant's conduct as alleged herein violated §17200. The acts, omissions, practices and non-disclosures of Defendant constituted a common continuous course of conduct of unfair competition by means of the commission of unfair and unlawful business acts or practices within the meaning of California Business and Professions Code, §17200, *et seq.*

70. Defendant engaged in "unlawful" business acts and practices by:

    a. breaching implied warranties;

    b. violating the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.*;

    c. negligently misrepresenting its products; and

    d. unjustly enriching itself at the cost of its consumers.

71. Defendant engaged in "unfair" business acts and practices by, among other things:

    a. engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the Class considering the reasonably available alternatives, based on legislatively declared policies not to sell defective products in the market without providing an adequate remedy;

    b. engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the Class; and

    c. engaging in unfair business practices by refusing to repair or recall the defective

CLASS ACTION COMPLAINT

Intel CPUs or providing compensation therefor.

72.     Specifically, Defendant engaged in "unfair" business acts and practices by selling the Intel CPUs knowing or being aware the CPUs contained a critical security Defect, where any "fix" would degrade the processors performance. Defendant also engaged in unfair business acts and practices by making express and implied warranties, which it refuses to honor.

73.     As such conduct is or may well be continuing and on-going, Plaintiff and each of the Class members are entitled to injunctive relief to prohibit or correct such on-going acts of unfair competition, in addition to obtaining equitable monetary relief.

74.     Plaintiff and Class members used Defendant's products and had business dealings with Defendant either directly or indirectly as described above. The acts and practices of Defendant have caused Plaintiff and Class members to lose money and property by being overcharged for and paying for the defective CPUs at issue, or being required to purchase an additional working CPU. Such loss was the result of the above acts of unfair competition and Defendant's misconduct in violation of the state laws set forth above. Plaintiff and Class members are therefore entitled to seek recovery of such amounts. Such injury occurred at the time such monies were paid. Plaintiff and Class members have thus suffered injury in fact and lost money or property as a result of such acts and practices as set forth in detail above.

75.     Defendant has unjustly benefited as a result of its wrongful conduct and its acts of unfair competition. Plaintiff and Class members are accordingly entitled to equitable relief including restitution and/or restitutionary disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of such business acts and practices, pursuant to California Business and Professions Code §§17203 and 17204, as well as attorneys' fees and costs pursuant to, among others, California Code of Civil Procedure §1021.5.

## **Fourth Claim for Relief**

### **Negligent Misrepresentation**

76.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained

18

in paragraphs 1 through 42 as though fully stated herein.

77.    Defendant had a duty to provide honest and accurate information to consumers so that consumers could make informed decisions regarding the purchase of Intel CPUs.

78.    Defendant had exclusive knowledge of the material information concerning the Defect, as set forth in detail above.

79.    Defendant suppressed and omitted the material information concerning the Defect as detailed above.

80.    Defendant knew, or in the exercise of reasonable diligence should have known, that consumers would be misled by the omission of this material information.

81.    Defendant actively and intentionally omitted these material facts, in whole or in part, with the intent to induce consumers into purchasing defective Intel CPUs.

82.    Plaintiff and Class members were unaware of the omitted material facts and would not have acted as they did if they had known of the omitted facts.  Had they known these facts, they would not have purchased the defective Intel CPUs at the prices they paid.

83.    By reason of the foregoing, Defendant's omission of material facts proximately caused Plaintiff and members of the Class to sustain damages in an amount to be determined at trial.

## Fifth Claim for Relief

### Unjust Enrichment and Common Law Restitution

84.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 42 as though fully stated herein.

85.    As a result of Defendant's wrongful and unlawful conduct, Plaintiff and the Class members have suffered a detriment while Defendant has received a benefit.

86.    By virtue of the purchase and sale of the CPUs in question, Defendant alternatively entered into a series of implied-at-law or quasi-contracts that resulted in money being had and received by Defendant, either directly or indirectly, at the expense of Plaintiff and Class members under agreements in assumpsit. Plaintiff and other Class members conferred a benefit upon

19

CLASS ACTION COMPLAINT

Defendant by purchasing one of the defective CPUs. Defendant had knowledge of the general receipt of such benefits, which Defendant received, accepted and retained. Defendant owes Plaintiff and Class members these sums that can be obtained either directly from Class members, Defendant or its authorized retailers.

87.     Defendant has received and retained funds properly payable to Plaintiff and Class members under such circumstances that in equity and good conscience Defendant ought not to retain those funds.

88.     Defendant should be required to pay the improperly received and retained funds, with interest thereon, to Plaintiff and Class members. Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendant from taking advantage of its own wrongdoing, Plaintiff and the Class are further entitled to the establishment of a constructive trust, in a sum certain, of all monies charged and collected or retained by Defendant from which Plaintiff and Class members may seek restitution.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the proposed Class pray for judgment as follows:

1.     For an order certifying this action as a class action;

2.     For an order appointing Plaintiff as representatives of the Class and their counsel of record as Class counsel;

3.     For an award of actual, general, special, incidental, statutory, compensatory and consequential damages in an amount to be proven at trial;

4.     For an award of exemplary and punitive damages in an amount to be proven at trial;

5.     For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

6.     For an order enjoining the wrongful conduct alleged herein;

7.     For costs;

CLASS ACTION COMPLAINT

8.    For interest;

9.    For attorneys' fees under applicable law; and

10.   For such other relief as the Court deems just and proper.

**VIII.   DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: March 20, 2018

Respectfully submitted,                **CLAYEO C. ARNOLD, APC**

/s/ Joshua H. Watson
Clayeo C. Arnold
Joshua H. Watson

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**

John Yanchunis*
Patrick A. Barthle II*

**LAW OFFICE OF JEAN SUTTON MARTIN PLLC**

Jean Sutton Martin*

**JOHNSON FIRM**

Christopher Jennings*

*Pro hac vice forthcoming

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT